IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NIEVES LUNA RODRIGUEZ AND SONIA MARIBEL VILLARREAL RODRIGUEZ, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF ABRAHAM LUNA, MINOR<br>*Plaintiffs*<br><br>vs.<br><br>PHARR SAN JUAN ALAMO INDEPENDENT SCHOOL DISTRICT, SEARGENT FELIX ROCHA AND SONIA SALINAS<br>*Defendants* | §§§§§§§§§§§§§§§§ | CIVIL ACTION NO. _____ |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW NIEVES LUNA RODRIGUEZ AND SONIA MARIBEL VILLARREAL RODRIGUEZ, individually, and on behalf of the Estate of Abraham Luna, deceased, Plaintiffs herein, and complaining of the Defendants, allege as follows:

**THE PARTIES**

1. Plaintiff, NIEVES LUNA RODRIGUEZ, individually, and on behalf of the Estate of Abraham Luna, deceased, is a resident of Hidalgo County, Texas, and is entitled to bring this action as father and heir of Abraham Luna, deceased.

2. Plaintiff, SONIA MARIBEL VILLARREAL RODRIGUEZ, individually, and on behalf of the Estate of Abraham Luna, deceased, is a resident of Hidalgo County, Texas, and is entitled to bring this action as mother and heir of Abraham Luna, deceased.

3.      Defendant Pharr San Juan Alamo Independent School District, State of Texas, ("PSJA ISD") is a public school district located in Hidalgo County, Texas and is operating under authority of the Texas Legislature pursuant to Tex. Educ. Code §§11.001, et seq.

4.      Defendant Sonia Salinas ("Salinas") upon information and belief resides in Hidalgo County, Texas.  Salinas is sued in her individual capacity.

5.      Defendant Sergeant Felix Rocha ("Sgt. Rocha") upon information and belief resides in Hidalgo County, Texas.  Sgt. Rocha is sued in his individual capacity.

## JURISDICTION

6.      Federal question Subject Matter Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 because Plaintiffs bring actions against Defendants pursuant to 42 U.S.C. §1983. This Court has supplemental subject matter jurisdiction over all of Plaintiffs' remaining counts pursuant to 28 U.S.C. §1367.

7.      Venue is proper before this Court pursuant to 28 U.S.C. §1391(b).

## FACTUAL BACKGROUND

8.      On or about February 7, 2014, Abraham Luna ("Abraham") was placed in Buell Middle School ("Buell") by PSJA officials against the wishes of his parents.  Upon arriving for the first day at Buell, Abraham Luna's mother, Mrs. Villarreal, met with Sgt. Rocha.  Mrs. Villarreal notified Sgt. Rocha that Abraham was unable to run or participate in physical activities because of his respiratory system condition.  She informed Sgt. Rocha that Abraham had asthma and had a hard time breathing when trying to engage in physical activity.  Mrs. Luna begged Sgt. Rocha to take care of her son and not force him to perform physical activities due to his medical condition. Sgt. Rocha ignored Mrs. Villarreal's pleas relating to her son's health risks.

On or about February 17, 2014, Abraham was ordered to run laps at Buell Middle School by Sgt. Rocha.  Shortly after beginning the run, Abraham complained to Sgt. Rocha that he was not feeling well and could no longer run.  Sgt. Rocha dismissed Abraham's complaints, ignored Mrs. Villarreal's previous warnings regarding her son's health and ordered Abraham to keep running. After a short while longer, Abraham collapsed and fell unconscious.  Instead of providing immediate aid as the situation clearly required, Sgt. Rocha instead chose to intervene in a separate incident between students that was occurring at the same time.  This conscious decision by Sgt. Rocha to keep Abraham running despite his mother's warnings and Abraham's complaints, and further disregard of Abraham's collapse was done with conscious disregard and deliberate indifference to the risks such actions posed to Abraham's constitutional rights of life, liberty, health, bodily integrity and safety.

9.      At the time of this incident, Salinas was the nurse at Buell. After an unreasonably long delay, Salinas eventually made her way to Abraham.  Upon assessing Abraham's condition, Salinas failed to render appropriate aid.  Instead of treating Abraham, Salinas did almost nothing to provide any assistance or medical care to Abraham.  After an excessively long period of time, an ambulance finally took Abraham to the hospital.  Sgt. Rocha and Salinas, with conscious disregard and deliberate indifference, failed to provide Abraham with adequate and prompt medical care.

10.     At the time of his collapse, Abraham received no competent medical attention or care, even though it was known or should have been known that immediate medical attention was essential for treatment.

11.     Abraham died on February 17, 2014, from the physical exertion imposed upon him by Sgt. Rocha and the lack of immediate medical attention.

12.     The death of Abraham Luna was caused by the policy, custom and practice of Sgt. Rocha's physical requirements at Buell; Sgt. Rocha's ordering Abraham to participate in the running; refusal to allow Abraham the opportunity to stop running and to rest when needed; refusal to heed the warnings of Abraham's mother or the pleas of Abraham to be allowed to stop; the failure to provide Abraham competent medical attention or care; the failure of Sgt. Rocha to respond to Abraham and obtain vital medical treatment for him; and the deliberate indifference and callous disregard from Sgt. Rocha, Salinas and PSJA ISD for the constitutional rights of Abraham.

13.     The extremely dangerous acts and omissions of Sgt. Rocha were consciously permitted through the policy, custom and/or practice of PSJA ISD official's failure to implement or enforce safety policies, by giving Sgt. Rocha discretion over physical requirements of students, and by failing to provide adequate medical staff and treatment. Custom of Buell took precedence over and constituted a conscious disregard and deliberate indifference to the health and safety of Abraham.

14.     Abraham possessed a right to health, safety, liberty, bodily integrity and life which was protected by the substantive due process rights under the Fourteenth Amendment of the United States Constitution.  His constitutional rights were violated by the actions and omissions of all the Defendants.

## UNCONSTITUTIONAL DEPRIVATION BY SGT. ROCHA

15.     Plaintiffs incorporate the allegations as set forth above as if fully stated herein.

16.     Sgt. Rocha was acting under color of state law at all times material to this action because he was acting pursuant to his duties and obligations of his employment in the PSJA I.S.D.  Sgt. Rocha was conducting running drills at Buell under the color of Texas state law and owed a

constitutional and legal duty to Abraham to protect his life and liberty, health, safety, and bodily integrity from harm by state actors, and to provide an environment that is safe from violations of his constitutional rights by state actors including all the Defendants.

17. Abraham's rights were well and clearly defined on the day of the incident. Sgt. Rocha knew or should have known of Abraham's rights and that his actions and the pattern, policy, custom or practice of those actions and/or omissions would or were likely to result in violation of those rights. Therefore, Sgt. Rocha was aware that the activities he put Abraham through exposed him to the risk of serious bodily injuries and even death which would be violations of Abraham's constitutional rights.

18. Sgt. Rocha consciously made performing his running drills a priority over the life, liberty, health, bodily integrity and safety of Abraham.

    A. The pattern, policy or practice of conducting running drills in terms of (i) the length of the drills; (ii) the timing of the drills; and (iii) the content of the drills; without regard for the condition of the student;

    B. The pattern, policy, or practice of failing and refusing to provide a reasonably adequate medical care and supervision;

    C. The pattern, policy or practice of failing and refusing to provide any immediate medical care and supervision to Abraham on February 17, 2014, after he became ill and instead disciplining other students while Abraham was down and in clear need of immediate medical attention;

    D. The pattern, policy or practice of maintaining inadequate safety policies, customs practices, rules and regulations for conducting running drills regardless of a student's condition;

E. The pattern, policy or practice of refusing to maintain proper emergency medical procedures and personnel.

F. The pattern, policy or practice of using personnel and staff that were either unable or unwilling to provide proper safety precautions;

G. The pattern, policy or practice of emphasizing and drills over the life, health and safety of the students;

H. The pattern, policy or practice of having untrained, unqualified individuals conducting drills without the proper and safe procedures for running drills;

I. The pattern, policy or practice of being untrained in recognizing the signs and symptoms of cardio-respiratory arrest and distress;

J. The pattern, policy or practice of maintaining inadequately trained medical personnel present during running drills;

K. Failing to recognize the signs of cardio respiratory arrest and distress being experienced by Abraham during the running drills;

L. Sgt. Rocha ordering Abraham to run despite being notified by Mrs. Luna that Abraham had a medical condition and could not run;

M. Ordering Abraham to continue running even though Abraham notified Sgt. Rocha of his respiratory distress;

N. Sgt. Rocha knowingly left Abraham unconscious while going to intervene in a student altercation instead of providing medical attention to Abraham;

O. The pattern, policy or practice of allowing the unsafe conditions for Abraham causing violations of the constitutional right of Abraham to continue Buell at PSJA ISD, when he knew that such conditions caused violations of the

constitutional rights and/or unreasonably exposed Abraham to the risk of violations of his constitutional rights.

19. Sgt. Rocha's deliberate indifference to and callous disregard for the life, liberty, health, bodily integrity and safety of Abraham violated the constitutional rights of Abraham under (i) the laws and Constitution of the United States of America and (ii) the laws and Constitution of the State of Texas.

20. Sgt. Rocha's deliberate indifference to and callous disregard for the life, liberty, health, bodily integrity and safety of Abraham was a reasonably foreseeable and direct cause of Abraham's bodily injuries and death, and was a proximate cause of the injuries and damages of Abraham and Abraham's parents as set forth below.

## UNCONSTITUTIONAL DEPRIVATION BY SALINAS

21. Plaintiffs incorporate the allegations as set forth above as if fully stated herein.

22. Salinas was acting under color of state law at all times material to this action because she was acting pursuant to her duties and obligations of her employment in the PSJA I.S.D. Salinas was the school nurse at Buell providing medical attention under the color of Texas state law and owed a constitutional and legal duty to Abraham to protect his life and liberty, health, safety, and bodily integrity from harm from state actors, and to provide an environment that is safe from violations of his constitutional rights by state actors including all the Defendants.

23. Abraham's rights were well and clearly defined on the day of the incident. Salinas knew or should have known of Abraham's rights and that her actions, the pattern, policy, custom or practice of her actions and/or omissions would or were likely to result in violation of those rights. Therefore, Salinas' failure to provide adequate medical attention to Abraham caused serious bodily injuries and even death which would be violations of his constitutional rights.

A. The pattern, policy, or practice of failing and refusing to provide a reasonably adequate medical care and supervision;

B. The pattern, policy or practice of failing and refusing to provide any immediate medical care and supervision to Abraham on February 17, 2014;

C. The pattern, policy or practice of maintaining inadequate safety policies, customs practices, rules and regulations for conducting running drills regardless of a student's condition;

D. The pattern, policy or practice of refusing to maintain proper emergency medical procedures and personnel.

E. The pattern, policy or practice of using personnel and staff that were either unable or unwilling to provide proper safety precautions;

F. The pattern, policy or practice of being untrained in recognizing the signs and symptoms of cardio-respiratory arrest and distress;

G. Failing to recognize the signs of cardio respiratory arrest and distress being experienced by Abraham during the running drills;

H. The pattern, policy or practice of maintaining inadequately trained medical personnel present during running drills;

I. Salinas was untrained and unqualified to provide adequate medical treatment to Abraham;

J. Salinas failed to provide adequate medical treatment to Abraham in violation of his constitutional rights;

K. The pattern, policy or practice of allowing the unsafe conditions, and having untrained and unqualified medical personnel for Abraham causing violations

of the constitutional rights of Abraham to continue at Buell at PSJA ISD, when she knew that such conditions caused violations of the constitutional rights and/or unreasonably exposed Abraham to the risk of violations of his constitutional rights.

24. Salinas' deliberate indifference to and callous disregard for the life, liberty, health, bodily integrity and safety of Abraham violated the constitutional rights of Abraham under (i) the laws and Constitution of the United States of America and (ii) the laws and Constitution of the State of Texas

25. Salinas' deliberate indifference to and callous disregard for the life, liberty, health, bodily integrity and safety of Abraham was a reasonably foreseeable and direct cause of Abraham's bodily injuries and death, and was a proximate cause of the injuries and damages of Abraham and the Luna family as set forth below.

## UNCOSTITUTIONAL DEPRIVATION BY PSJA I.S.D.

26. Plaintiffs incorporate the allegations set forth above as if fully stated herein.

27. PSJA I.S.D. was authorizing and sponsoring Buell activities on February 17, 2014, with its corresponding policies, customs, practices, rules, and regulations (and lack thereof) under the color of Texas state law.

28. PSJA I.S.D. owed a constitutional and legal duty to Abraham to protect his bodily integrity and life from harm from state actors, including Sgt. Rocha, and to provide an environment that was adequate to protect those rights through the formulation and enforcement of policies, customs and/or practice and supervision.

29. The dangerous policies, customs, practices, rules, and regulations (and lack thereof) of the PSJA I.S.D. included, without limitation, the following policies, customs and practices:

A. Maintaining inadequate safety policies, customs, practices, rules, and regulations for conducting running drills at Buell;

B. A policy, custom and/or practice of failing to enforce safety standards for conducting running drills at Buell;

C. A policy, custom and/or practice of failing to maintain proper emergency medical procedures and/or personnel at Buell;

D. A policy, custom and/or practice of maintaining and training staff that was either unable or unwilling to provide proper safety precautions for Abraham Luna; and

E. A policy, custom and/or practice of inadequately training the staff in the proper and safe way to conduct running drills for students with Abraham's condition;

F. A policy, custom and/or practice of inadequately training the staff in recognizing the signs and symptoms of cardio respiratory distress and arrest and a student in Abraham's condition;

G. A policy, custom and/or practice of not maintaining adequate medically trained personnel at Buell during Abraham Luna's running drills;

H. A policy, custom and/or practice of allowing Sgt. Rocha to control the conditions and context of drills and assessing a student's condition and ability to participate in running drills.

I. Policy, custom and/or practice of failing to heed parental warnings of a student's limitations, like Abraham Luna's mother warned Sgt. Rocha.

30. The policies, customs and/or practices listed above were so persistent, widespread, common, and well-settled on February 17, 2014, that they in themselves represented the official policies, rules and regulations of PSJA I.S.D.

31. PSJA I.S.D.'s failure to take any action was the result of its conscious disregard and deliberate indifference to the violations of the constitutional rights of Abraham Luna. This failure to supervise its employees, specifically Sgt. Rocha, constituted a policy, custom and/or practice of tacit approval and ratification of the violations of the constitutional rights of Abraham Luna.

32. PSJA I.S.D. failed to provide properly trained and competent medical providers constituting deliberate indifference and conscious disregard to Abraham's constitutional rights.

33. The policies, customs, and/or practices, rules, regulations of PSJA I.S.D. were the result of its conscious indifference to the constitutional rights of Abraham and violated the constitutional rights of Abraham under (i) the laws and Constitution of the United States of America and (ii) the laws and Constitution of the State of Texas.

34. The policies, customs, and/or practices, rules, regulations of PSJA I.S.D. were a direct and proximate cause of the violations of Abraham's legal and constitutional rights that were a reasonably foreseeable and direct cause of the personal injuries and death of Abraham, and were a direct cause of the injuries and damages of Abraham Luna, Nieves Luna Rodriguez and Sonia Maribel Villarreal Rodriguez.

## DAMAGES

35. Plaintiffs incorporate the allegations set forth above as if fully states herein.

36. As a direct and proximate result of (i) Sgt. Rocha's and Salinas' conscious disregard and deliberate indifference and violation of Abraham's constitutional and legal rights and the (ii)

PSJA I.S.D.'s violation of Abraham's constitutional and legal rights, Abraham suffered cardio respiratory distress and arrest on February 17, 2014 and died.

37. The Defendants exhibited deliberate indifference, intentional conduct, reckless, wanton and conscious disregard for the constitutional rights, life, welfare, bodily integrity and safety of Abraham. Thus, Nieves Luna Rodriguez and Sonia Maribel Villarreal Rodriguez individually and, on behalf of the Estate of Abraham, seek actual and exemplary damages as allowed by federal and Texas law in such an amount found to be proper at trial under the facts and circumstances.

38. As a direct and proximate result of the (i) Sgt. Rocha's and Salinas' violation of Abraham's constitutional and legal rights and (ii) PSJA I.S.D.'s conscious disregard and deliberate indifference and violation of Abraham's constitutional and legal rights, Nieves Luna Rodriguez and Sonia Maribel Villarreal Rodriguez suffered the wrongful death and the loss of financial and moral support, care, advice, attention, comfort, counsel, and love and affection of their son Abraham, all to the damage of Nieves Luna Rodriguez and Sonia Maribel Villarreal Rodriguez for a sum to be determined at trial.

39. At the time of his death, Abraham, was a healthy sixteen-year-old boy with a reasonable life expectancy. During his lifetime, Abraham performed numerous and usual tasks in and about the family residence, and gave advice, counsel, care, love, support and protection to Nieves Luna Rodriguez and Sonia Maribel Villarreal Rodriguez. In all reasonable probability, Abraham would have continued to give Nieves Luna Rodriguez and Sonia Maribel Villarreal Rodriguez such love and support, but for the acts and omissions of the Defendants that resulted in his death.

40. The Defendants exhibited deliberate indifference, intentional conduct, reckless and wonton and conscious disregard for the constitutional rights, life, welfare, bodily integrity and

safety of Nieves Luna Rodriguez and Sonia Maribel Villarreal Rodriguez. Thus, Nieves Luna Rodriguez and Sonia Maribel Villarreal Rodriguez seek actual and exemplary damages, including, but not limited to, funeral and burial expenses, against the Defendants as allowed by law in such an amount to be determined at trial.

## JURY DEMAND

41.     Plaintiffs hereby demand a trial by jury.

## PRAYER

WHEREFORE, the Plaintiffs pray that the Defendants be duly summoned to appear and answer herein, and that on final trial hereof, Plaintiffs have judgment of the Court against the Defendants as follows:

> A. Damages for the pain, suffering, and loss of life of Abraham Luna, Deceased, in an amount to be proven at trial.
>
> B. Damages for loss of value of emotional support, society, care, advice attention, comfort, counsel, love, and affection, of which Nieves Luna Rodriguez and Sonia Maribel Villarreal Rodriguez have been denied due to the wrongful death of their son,
>
> C. Damages proven at trial for the reasonable costs of hospitalization, emergency care, funeral and burial expenses resulting from the death of Abraham Luna, Deceased;
>
> D. Exemplary damages in such an amount as determined by a jury,
>
> E. Reasonable attorney fees and costs proven at trial as allowed by law,
>
> F. Prejudgment and Postjudgment interest as allowed by law,

G. Such other and further relief both general and special, at law and in equity, to which Plaintiffs are entitled.

Respectfully submitted,

BY:     /s/    Luis Cardenas
Luis Cardenas
State Bar No.  24001837
Federal ID No. 21657
**ESCOBEDO & CARDENAS, L.L.P.**
3700 N. 10th Street, Suite 210
McAllen, TX 78501
Telephone:     (956) 630-2222
Telecopier:     (956) 630-2223
luis@escobedocardenas.com

**ATTORNEY-IN-CHARGE FOR**
NIEVES LUNA RODRIGUEZ AND SONIA MARIBEL VILLARREAL RODRIGUEZ, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF ABRAHAM LUNA, MINOR

*Of counsel:*
**ESCOBEDO & CARDENAS, L.L.P.**
3700 N. 10TH Street, Suite 210
McAllen, Texas  78501
Telephone: (956) 630-2222
Telecopier: (956) 630-2223